### KARNO-SMITH CO. v. MALONEY, Collector of Internal Revenue.

#### No. 5744.

District Court, D. New Jersey.

Aug. 14, 1939.

908

Ellis L. Pierson, of Trenton, N. J., for plaintiff.

Fred J. Neuland, Sp. Asst. to Atty. Gen., and John J. Quinn, U. S. Atty., of ·Red Bank, N. J., and Thorn Lord, Asst. U. S. Atty., of Trenton, N. J., for defendant.

FORMAN, District Judge.

The facts in this case, as given below, were stipulated, and the case was tried without a jury.

On October 21, 1931, the plaintiff, general contractor, entered into a contract with the State House Commission acting for the State of New Jersey for the construction of boulevards and approaches to the State House Addition and War Memorial Building at Trenton, New Jersey. On November 16, 1931, the plaintiff entered into a contract with the New Jersey Brick and Supply Co., Inc., to furnish and deliver all granite for the undertaking. The New Jersey Brick and Supply Co., Inc., in turn, purchased the granite from the Cold Spring Granite Co. The granite so purchased actually went into the operation.

Pursuant to the provision of the Statute of New Jersey, entitled, "An Act to protect persons performing labor or furnishing materials for the construction, alteration or repair of public works", approved Feb. 16, 1918 (N.J.Laws of 1918, page 203 [N.J.S.A. 2:60-207 et seq.]), plaintiff, as general contractor, gave a bond conditioned, among other things, for the payment by all subcontractors for all materials furnished in the construction of said public works.

The New Jersey Brick and Supply Co., Inc., failed to pay its account with the Cold Spring Granite Co. for the material used in this public work, and, on September 3, 1932, the Cold Spring Granite Co. notified Karno-Smith Co. by letter that there was a balance due it from the New Jersey Brick and Supply Co., Inc., and that Karno-Smith Co. should hold said fund until further advice from it. At the time of the completion of the construction, Karno-Smith Co. had on hand $5,456.26 as the unpaid balance due under its contract with the New Jersey Brick and Supply Co., Inc.

Now, the New Jersey Brick and Supply Co., Inc., also owed the United States Government money for income tax for the year 1930, and on February 28, 1932, a warrant for distraint was served upon the New Jersey Brick Co. for the balance of its 1930 tax. This warrant remained unsatisfied, and on September 10, 1932, a notice of tax lien was recorded in the office of the Clerk of Mercer County, New Jersey, which disclosed that the New Jersey Brick and Supply Co. hereinafter called the taxpayer, was indebted to the United States in the sum of $1,145.67 for Income Taxes for the year 1930.

On September 12, 1932, the defendant's predecessor in office served a notice upon the plaintiff in the following language:

"Notice of Levy on Bank Deposits
"United States of America,
"First Collection District
"State of New Jersey
"To   Karno-Smith Company,
(Name of bank with which taxpayer has money on deposit)
"At   Trenton, N. J.

"You are hereby notified that there is now due, owing, and unpaid from New Jersey Brick & Supply Company, Inc., Hunt Bldg., Trenton, N. J., to the United States of America the sum of One Thousand, One Hundred, Forty-five Dollars and Sixty-seven Cents Tax, Interest at 1% per month began 9–15–31 dollars ($1145.67) as and for an internal revenue tax.

"You are further notified that all property and rights to property now in your possession and belonging to the aforesaid New Jersey Brick & Supply Company, Inc., and all sums of money owing from you to the said New Jersey Brick & Supply Company, Inc., are hereby seized and levied upon for the payment of the aforesaid tax, together with penalties and interest, and demand is hereby made upon you for the sum of One Thousand, One Hundred, Forty-five Dollars and Sixty-seven Cents Tax, Interest at 1% per month began 9–15–31 dollars ($1145.67) of the amount now owing from you to the said New Jersey Brick & Supply Company, Inc., for such lesser sum as you may be indebted to him, to be applied in payment of the said tax liability.

"Dated at Camden, N. J., this 10th day of September, 1932.

"E. L. Sturgess,
"Collector of Internal Revenue."

On that date, the Vice-President of the plaintiff acknowledged receipt of the above notice, known as Form #668-A.

The taxpayer had likewise failed to pay its income taxes for the year 1931, and on February 18, 1933, a warrant for distraint for income taxes for that year, in the sum of $739.93, was served upon the taxpayer.

Notice of the lien of these taxes was likewise recorded in the office of the Clerk of Mercer County, New Jersey, on the same day.

On February 21, 1933, a Form #668-A was served upon the plaintiff for these taxes, similar to the service of September 12, 1932, demanding the said sum of $739.93 from the plaintiff. The receipt of this notice was acknowledged on the said February 21, 1933, by the assistant secretary of the plaintiff. The plaintiff failed to comply with the notices and demands served upon its officers, and on September 18, 1933, another notice of levy and demand on Form #668-C was served upon the vice-president of the plaintiff for the 1930 tax in the sum of $1,145.67, and on the same date, a similar notice and demand was served upon the assistant secretary of the plaintiff for the 1931 tax of $739.93.

On February 27, 1934, the plaintiff paid, pursuant to these demands, the sum of $2,-415.55 which was made up as follows:

Warrant for distraint No. 24,767
for the year 1930, balance of
tax .......................... $1,145.67
Interest at 1% per month....... 370.65
Warrant for distraint No. 25,453
for the year 1931, balance of
tax .......................... 739.93
Interest at 1% per month....... 150.90
Filing and recording two Federal
tax liens .................... 4.20
Discharging two Federal tax liens 4.20

$2,415.55

Claims for refund aggregating the said sum of $2,415.55 were filed on January 27, 1936, with the defendant, and were forwarded by the defendant to the Commissioner of Internal Revenue at Washington on January 31, 1936. On July 24, 1936, the Commissioner of Internal Revenue notified the plaintiff that he had disallowed these claims for refund.

Therefore, plaintiff brought this suit to recover the payment of $2,415.55 the itemization of which is set forth above.

Meanwhile, on May 2, 1933, the First-Mechanics National Bank of Trenton obtained a judgment against the taxpayer, and on May 8, 1933, it caused execution to be issued and levy made upon the rights and credits and money due to the taxpayer from the plaintiff and in the plaintiff's hands.

Thereafter, Cold Spring Granite Co. demanded of the plaintiff the sum of $6,931.94, the balance due it for the granite supplied to the taxpayer. This demand was based upon the alleged obligation of the plaintiff on a bond issued to the State House Commission, required by the New Jersey Statute relating to contracts for public works aforesaid. P.L.1918, Ch. 75, page 203, supra.

On July 14, 1933, Cold Spring Granite Company agreed to accept from the plaintiff, and the latter agreed to pay, the sum of $5,456.27 in satisfaction of the granite company's claim. The plaintiff, in fact, paid the sum of $2,715.05 on account of this agreement. This left a balance of $2,741.22, for which the Cold Spring Granite Company instituted suit against the plaintiff and the taxpayer. This suit against the plaintiff was based on the bond aforesaid.

Neither defendant answered this suit, because of the following circumstances:

As reported in the case of First-Mechanics National Bank of Trenton v. New Jersey Brick and Supply Co., Inc., et al., 112 N.J.L. 218, 171 A. 176, the First-Mechanics National Bank of Trenton having caused execution to be issued and levy made upon Karno-Smith Co., the plaintiff herein, for $855.62, money due to it upon its judgment against the taxpayer, obtained a rule to show cause why its said judgment should not be satisfied out of the funds in the hands of Karno-Smith Co., and according to the report of the decision above cited, the Cold Spring Granite Co. agreed that its rights in its suit against the plaintiff herein, and the taxpayer should be determined by the disposition of the court on the rule to show cause aforesaid.

Incidentally, although it does not bear upon this case, the New Jersey Supreme Court discharged the said rule to show cause, and apparently the First-Mechanics Bank of Trenton was not successful in obtaining satisfaction of its judgment against the taxpayer out of the funds held by the plaintiff herein.

The plaintiff contends that the sum of $5,456.27 representing moneys due by it to the taxpayer was immune from the levy by the defendant for Income Taxes.

The defendant insists that the said funds in the hands of the plaintiff were subject to levy for taxes under authority of Section 1114(e) and (f) of the 1926 Revenue Act, which is as follows:

"(a) *Requirement.* Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process. (Feb. 26, 1926, c. 27, § 1114(e), 44 Stat. 116.)

"(b) *Penalty for violation.* Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy. (Feb. 26, 1926, c. 27, § 1114(e), 44 Stat. 116.)

"(c) *Person defined.* The term 'person' as used in this section includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs. (Feb. 26, 1926, c. 27, § 1114(f), 44 Stat. 116.)" 26 U.S.C.A. § 1610.

Plaintiff submits that the moneys in its hands, forming the balance due by it to the taxpayer, were susceptible only to use in liquidation of debts of the taxpayer, incurred by the taxpayer for materials used by it in the public work. The plaintiff's position is, that by virtue of its bond it was surety for the payment by the taxpayer of such

---

indebtedness, and that it became the agent of the Cold Spring Granite Company for the collection of moneys due that company for materials furnished by the granite company, through the taxpayer, for use in the public work at Trenton, New Jersey.

The plaintiff submits that, on September 3, 1932, it had notice from the Cold Spring Granite Company that the taxpayer had not paid its bill for granite, and it was warned by the Cold Spring Granite Company, in the said letter, to withhold any funds in its hands due to the taxpayer.

The plaintiff claims that, having such notice in its hands, it had no right to honor the demands and levies made upon it by the Government, to satisfy taxes due from the taxpayer to the Government.

It will be recalled that the first such notice and demand of the Government was served upon the plaintiff on September 12, 1932, or some few days after plaintiff's receipt of the letter of the Cold Spring Granite Company.

The second demand of the Government was served in February of 1933.

Up to this point, the plaintiff maintained the fund intact, and became faced with a third demand, namely, that of the levy of the First-Mechanics National Bank on May 8, 1933.

On July 14, 1933, the plaintiff agreed to surrender the entire fund to the Cold Spring Granite Company. This was done in the face of the fact that, on the same date, July 14, 1933, it was advised by the Commissioner of Internal Revenue, in response to a request that the defendant be instructed to vacate the levies, that the same "would not be vacated and that they must be honored by the Karno-Smith Company".[1]

The Statute permits the Collector of Internal Revenue to fasten upon property or rights to property, subject to distraint,

---

[1] Treasury Department
Washington
July 14, 1933

GC:CTT
A–267263
Mr. Ellis L. Pierson,
  Counsellor-at-Law,
    Broad Street National Bank Bldg.,
    Trenton, New Jersey
In re: New Jersey Brick & Supply Co.
        Inc.,
      Trenton, New Jersey.
Sir:

Reference is made to your letter of June 14, 1933, stating that the Collector of Internal Revenue for the First Collection District of New Jersey (whose office is located at Camden, New Jersey), has served notices of levy upon the Karno-Smith Company at Trenton, in order to collect the delinquent tax liability of the taxpayer, the New Jersey Brick and Supply Company, Inc., out of a balance of $5,456.27 owing to the taxpayer from the Karno-Smith Company. You state that one levy in the sum of $1,145.57 was made on September 12, 1932, and that another in the sum of $739.92 was made on February 21, 1933.

According to your letter, the Karno-Smith Company was general contractor for the War Memorial Building at Trenton, its indebtedness of $5,456.27 to the taxpayer being for work performed by the latter as a sub-contractor. It seems that the taxpayer in turn is indebted in the sum of approximately $7,000 to the Cold Springs Granite Company for granite supplied by the latter company, which debt, the Karno-Smith Company is required to pay in accordance with the provisions of a bond given pursuant to the requirements of New Jersey Law.

You state that a payment to the Cold Springs Granite Company by the Karno-Smith Company would be a defense to a claim against it by the taxpayer for payment to it of the balance of $5,456.27; that the bond has the effect of making the Karno-Smith Company a surety for debts due materialmen from sub-contractors; and that where a surety is required to pay a debt due from the principal, the payment may be offset against a demand of the principal upon the surety. Under the circumstances, you consider that the Government's claim should not be superior to the taxpayer's claim against the Karno-Smith Company, and therefore you ask whether the Bureau will instruct the collector to vacate the levies, provided the facts stated can be established to the collector's satisfaction.

You further state that possibly the true relationship between the taxpayer and the Cold Springs Granite Company is that of principal and agent, but that it will be sufficient time to go into this question if litigation ensues. It also seems that one reason for desiring to have the levies vacated, is that at present the Karno-Smith Company can settle with the Cold Springs Granite Company by paying it simply the $5,456.27 due the taxpayer, whereas, if there is a delay, the Cold Springs Granite Company may demand full payment of its claim of $7,000.

The statutory provisions applicable to the Karno-Smith Company's obligation to honor the levies are found in section

upon which a levy has been made in the hands of any person, and requires the surrender of such property or rights to such Collector unless such property or rights are at the time of such demand, subject to an attachment or execution under any judicial process.

■ The first question then arises: Did the plaintiff have in its possession property or rights to property subject to distraint and susceptible to levy by the Collector? This must be answered in the affirmative. The plaintiff had in its hands $5,456.27, which it owed to the taxpayer. Under the New Jersey law and its bond, there adhered to this indebtedness certain obligations upon the plaintiff to see that these moneys were applied to any indebtedness created by the taxpayer due to a material man who furnished material utilized in public work, which was the subject of plaintiff's general contract. This additional responsibility upon the part of the plaintiff did not alter the basic fact that the plaintiff possessed property or rights of the taxpayer in the form of the balance due from it to the taxpayer in the sum of $5,456.27.

■ The next question which arises is: Was the plaintiff justified in its refusal to surrender such property or rights to the Collector at the time of his demand? This must be answered in the negative. The only justification under the statute for such refusal to surrender is that the property or right in the hands of the plaintiff was subject to an attachment or an execution under any judicial process. In the case of United States v. American Exchange Irving Trust Co., D.C., 43 F.2d 829, 831, the court said: "The only excuse recognized by the statute for failure to comply with the demand is limited to 'an attachment or execution under any judicial process,' and I can see no reason for broadening the section to include other defenses not permitted by the statute itself."

■ The plaintiff argues that, under the decision of Nutz v. A. W. Crone & Sons, 109 N.J.Eq. 95, 156 A. 668 the status of surety and principal is created where the relationship of general contractor and subcontractor is established as between plaintiff and the taxpayer in this case. It urges that the said case established the right of the general contractor to set off an unmatured claim against any balance due by the general contractor to a defaulting, insolvent sub-contractor. Generally, the soundness of this law is to be conceded, but I cannot agree that such a set-off must be allowed in the face of the statute in question, which is designed to protect the right of the sovereign in the collection of its taxes. In no sense can the letter of the Cold Spring Granite Company be considered to satisfy the requirement of the statute that there should be an existing attachment or execution under a judicial process to justify failure to surrender to the Government.

■ Further, the chronology of the events discloses that on July 14, 1933, when the plaintiff agreed to surrender the fund to the Cold Spring Granite Company, it had ample notice of the Government's claims against

1114, subdivisions (e) and (f), Revenue Act of 1926, reading as follows:

"(e) Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process. Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy.

"(f) The term 'person' as used in this section includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

With reference to section 1114(e), above-quoted, the court in United States v. American Exchange Irving Trust Co., D.C., 43 F.2d 829, 831, stated:

"The only excuse recognized by the statute for failure to comply with the demand is limited to 'an attachment or execution under any judicial process.'"

In view of the foregoing, the Bureau is of the opinion, according to the facts in your letter, that the levies may not be vacated and that they must be honored by the Karno-Smith Company.

Respectfully,
Guy T. Helvering (Signed)
Guy T. Helvering
Commissioner.
(Exhibit P-1 in evidence)

that fund, and it chose to disregard the claim of the Government. This is emphasized by Exhibit P–1 in evidence (supra) in which, on that very day, the Commissioner of Internal Revenue emphasized the Government's position that the levies upon the plaintiff could not be vacated, and that they should be honored. It seems that the plaintiff, at this point, could have protected itself by an interpleader action or some form of security. It is not sufficient to plead, now, that it would have been impossible for the plaintiff to protect the funds in its hands by an attachment or execution against itself.

It becomes unnecessary to consider the Government's contention that the payment here was voluntary and not susceptible of recovery in the light of the conclusion reached on other points.

Under the circumstances, the suit by the plaintiff cannot be sustained, and a judgment may be taken against it of no cause for action.